**WHITTELL v. McLAUGHLIN, Collector of Internal Revenue. ***

Circuit Court of Appeals, Ninth Circuit.
March 11, 1929.

No. 5603.

Charles S. Cushing, O. K. Cushing, Platt Kent, and Walter Slack, all of San Francisco, Cal. (Delger Trowbridge, of San Francisco, Cal., of counsel), for appellant.

*Rehearing denied April 15, 1929.

George J. Hatfield, U. S. Atty., and George M. Naus and Albert C. Wollenberg, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

DIETRICH, Circuit Judge. Appellant brought this suit to recover from the appellee, collector of internal revenue, $5,094.79, alleged to have been an overpayment of taxes on account of a gift of corporation stock made by her to her son, George Whittell, Jr., in 1924. Upon a trial below without a jury, her complaint was dismissed.

Appellant is the widow, and George Whittell, Jr., is the only surviving child, of George Whittell, Sr., who died testate in the city of San Francisco in March, 1922. By the terms of decedent's will, half of his estate was devised to the widow and half to the son; but all of it being community property, it was decided in the probate proceedings that only one-half thereof was subject to testamentary disposition, with the result that three-fourths were distributed to appellant and one-fourth to her son. Prior to the distribution, the mother and son, being of the opinion that it would be best to hold the property together, mutually agreed to organize a corporation to which they would convey their several interests in consideration of the issuance to them in corresponding proportions of the capital stock. Accordingly, in June, 1924, they caused such a corporation to be organized under the laws of California, with a capital stock of 100 shares of the par value of $1,000 per share, and to appellant were issued 75 shares and to her son the other 25. Convinced that it had been her husband's wish that half the property should go to their son, and being desirous of complying therewith, appellant had, with the knowledge of her son, planned to convey to him one-third of her legal share, and accordingly upon the issuance to her of stock she forthwith caused 25 shares thereof to be transferred to him; and this is the gift in question.

The status of the administration at this juncture is not clearly disclosed, but apparently about the time the corporation was formed there was a distribution of the major portion of the estate, and the property so received from the executors was formally transferred to the corporation pursuant to the agreement between mother and son and the understanding with the corporation under which it issued all of its capital stock. The residue of the estate, consisting of securities stipulated to have been of a value in 1924 of

$1,134,858, was not distributed until 1925 and in the meantime remained in the possession of the executors. It is not disputed that all the property of the estate, whatever its character or status, was intended to be covered by the agreements and understandings hereinbefore mentioned, and accordingly when an expert accountant employed for that purpose opened a set of books for the corporation in the early part of 1925, at which time the residue of the estate still remained undistributed, he entered it as an asset of the corporation. And later in the same year, in preparing appellant's gift-tax return for the year 1924, he set it up as an asset of the corporation to be considered in estimating the value of the gift stock. The return was sworn to by appellant on March 16, 1925, and on the same day filed with appellee. Upon the facts therein exhibited the tax was correctly computed, and the amount thereof, including that which is here in controversy, was paid without question or protest. Fifteen months later, in the course of an investigation bearing upon another aspect of the return, appellant's attorneys advised her that it had been a mistake to treat the undistributed portion of the estate as an asset of the corporation for the purpose of fixing the value of the gift stock, and accordingly on July 20, 1926, she filed an amended return together with a claim for the refund of the taxes based on such value, namely, the amount here in suit. About this time also the residue of the estate was distributed by the executors. Upon a disallowance of the claim appellant instituted this action.

It is beside the question to say that a bare promise to make a gift is not enforceable. The gift appellant made was of the 25 shares of stock and that was fully consummated in 1924. In the agreements and understandings referred to, this stock, in value, stood for a one-fourth interest in the estate, and such was the express representation appellant made in her original tax return. Nor does it avail anything to characterize what occurred between the parties as an "understanding" merely. An expressed "understanding" between two parties touching their future rights and obligations in respect of property may be nothing less than an informal oral agreement quite as binding as a written contract. Nor was the corporation formed merely as an instrumentality for consummating an intended gift. True, appellant resorted to a transfer of its stock as a convenient means of carrying out her purpose in that respect, but this was merely a resulting incident and not a moving cause for the formation of the corporation. She herself testified that it was organized to take over and handle all the property of the estate, and without qualification she answered in the affirmative the question: "Was it your agreement or understanding with your son George that you were each to turn over what property you should receive from the George Whittell, Sr., estate into the Whittell Investment Company and receive in return therefor all the stock of the Whittell Company?" And as already indicated, up to the time the advice of counsel was received in 1924, the parties acted upon the assumption that they were bound by this agreement. The promises were mutual, the mother agreeing to turn over her interest in consideration of her son's promise to make like disposition of his interest. As between the two there can be no question that the agreement of each was supported by a valuable consideration. Owned and controlled as it was by appellant and her son, the corporation acted informally; but, giving legal effect to what was done, we have an implied agreement that it was to issue all of its stock in consideration of receiving all the property of the estate, and that plaintiff was to receive three-fourths of the stock in consideration of her promise to deliver to the corporation her three-fourths interest in the properties of the estate. This agreement it fully performed, and plaintiff and her son partially performed during the year 1924. The fact that the stipulated consideration passing to the corporation greatly exceeded the par value of its stock is immaterial. We are aware of no principle under which it is to be held that a corporation may not enter into a valid agreement for the sale of its stock for a price above par.

Our conclusion is that because appellant and her son were, at the time the stock gift was consummated, under legal obligation to convey to the corporation their several interests in the undistributed portion of the estate, the value of such right on the part of the corporation was to be considered in fixing the value of the gift stock for taxation purposes.

Accordingly the judgment is affirmed.